**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Starr Indemnity and Liability Company, as Subrogee of Med-Trans, a corporation; and Med-Trans Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Rolls-Royce Corporation; Rolls-Royce North America, Inc.; John Does I-X; ABC Corporations I-X; and Black and White Partnerships I-X,<br><br>Defendants. | No. CV-14-02100-TUC-BGM<br><br>**ORDER** |

Currently pending before the Court is Defendant Rolls-Royce Corporation's Motion for Summary Judgment (Doc. 90). Defendant has also filed a Separate Statement of Facts in Support of Motion for Summary Judgment ("SOF") (Doc. 91). Plaintiff has responded ("Response") (Doc. 97) and filed its Controverting Statement of Facts in Opposition to Rolls-Royce Corporation's Motion for Summary Judgment ("CSOF") (Doc. 98). Defendant replied (Doc. 104) and filed a Supplemental Statement of Facts and Controverting Statement of Facts in Support of Rolls-Royce Corporation's Reply in Support of its Motion for Summary Judgment ("SSOF") (Doc. 105). Plaintiff then filed a Motion to Strike Defendant Rolls-Royce Corporation's Supplemental Statement of Facts in Support of its Reply in Support of its Motion for Summary Judgment (Doc. 106), which Defendant opposed (Doc. 107). As such, the motions are fully briefed and ripe for adjudication.

In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument.

## I. MOTION TO STRIKE

As an initial matter, Plaintiffs seek to strike Defendant's Supplemental Statement of Facts and Controverting Statement of Facts (Doc. 105) because it is not allowed by the local rules. *See* Pls.' Mot. to Strike (Doc. 106). Plaintiffs further urge that Defendant's Supplemental Statement "contains objections to Plaintiffs' evidence and is littered with legal arguments" also in violation of the local rules. *Id.* at 3. The Court is not inclined to strike Defendant's submission based on a perceived technical procedural violation. The Court will evaluate the evidence, as necessary, in the course of its resolution of Defendant's summary judgment motion. As such, Plaintiffs' motion to strike is DENIED.

## II. FACTUAL BACKGROUND[1]

### A. *The Aircraft*

The helicopter involved in the incident giving rise to the current litigation was a 1998 Bell 407 emergency medical services helicopter, bearing serial number 53281 and FAA registration number N509MT (the "Aircraft"). Compl. (Doc. 1-1) at ¶ 6. On January 28, 2003, Med-Trans purchased the Aircraft from Augusta Aerospace that contained a different engine than the one involved in the incident. Def.'s SOF (Doc. 91), Aircraft Bill of Sale 1/28/2003 (Exh. "1"); *see also* Pls.' CSOF (Doc. 98). At the time of the incident, the Aircraft contained a 250-C47B turbine engine, with serial number CAE-847656 (the "subject engine"). Compl. (Doc. 1-1) at ¶ 9. The subject engine was

---

[1] Facts are undisputed, unless otherwise noted. The Court did not include facts that it found to be irrelevant to the determination of Defendant's motion or otherwise improper, *e.g.* legal conclusions.

manufactured by Rolls-Royce Corporation ("RRC") and sold to Bell Helicopter Canada, also known as Bell Helicopter Textron, Inc., ("Bell") and was shipped to Bell on April 28, 2004.[2] Def.'s SOF (Doc. 91), Certificate of Conformance 4/28/2004 (Exh. "2"); *see also* Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 4. When Bell originally sold the subject engine, it was in a helicopter with FAA registration number N515MT ("originating helicopter"), which is a separate helicopter from the Aircraft at issue in this case. Def.'s SOF (Doc. 91), Service Record, Engine Assembly, Engine Serial No. 847656 (Exh. "4"); *see also* Pls.' CSOF (Doc. 98), Service Record, Engine Assembly, Engine Serial No. 847656 (Exh. "D"). On October 6, 2004, Bell notified RRC to begin the warranty of the subject engine on January 15, 2005 and identified Med-Trans as the customer.[3] Def.'s SOF (Doc. 91), Gerdes e-mail to Model 250 – Customer Support 2/4/2005 (Exh. "3"). On November 16, 2009, Premier Turbines replaced the subject engine's Third Stage Turbine Wheel, serial number X536586, with serial number X589849 (the "subject Turbine Wheel"). Def.'s SOF (Doc. 91), Assembly Record, Turbine Assembly, Turbine Serial No. CAT-44958 (Exh. "5"). On November 28, 2009, the subject engine with the subject Turbine Wheel was installed in the Aircraft. Def.'s SOF (Doc. 91), Exh. "4."

### *B. The Hard Landing*

All of Plaintiffs' damages arise from an alleged "hard landing" of a Bell 407

---

[2] Plaintiffs do not dispute that the subject engine was manufactured by Rolls-Royce Corporation; however, argues that the Certificate of Conformance "does not contain any information as to whom [t]he engine was shipped or when." Pls.' CSOF (Doc. 98) at ¶ 5. The Certificate of Conformance refers the "the Model 250 series engine *shipped herewith*" and is dated April 28, 2004. Def.'s SOF (Doc. 91), Exh. "2" (emphasis added). Plaintiffs acknowledge that the subject engine was installed in a different helicopter, which Med-Trans leased, as of July 21, 2004. Pls.' CSOF (Doc. 98) at ¶¶ 26–27. Furthermore, Plaintiffs do not object to Defendant's subsequent statement regarding Bell as the seller of the subject engine. *See* Def.'s SOF (Doc. 91) at ¶ 7; Pls.' CSOF (Doc. 98) at ¶ 7.

[3] Plaintiffs objects to this statement because the document constitutes inadmissible hearsay and does not support the statement made. Pls.' CSOF (Doc. 98) at ¶ 6. The Court agrees that the e-mail is inadmissible hearsay, not subject to any exception. This information is also contained in Senior Airworthiness Specialist Sain's Declaration, which is admissible evidence. *See* Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 6.

helicopter that occurred on April 14, 2012, in Aberdeen, South Dakota.[4] *See* Compl. (Doc. 1-1) ¶ 8. The hard landing occurred over thirty (30) months and over a thousand hours after the subject Turbine Wheel was installed in the subject engine. *See* Def.'s SOF (Doc. 91), Aircraft Status Sheet 4/10/2012 (Doc. 91-1) at 6, 11 & Post-Incident Photo. of Hobbs Meter (collectively Exh. "6").[5]

### C. *Warranties*

#### 1. Engine Warranty

The subject engine was warrantied as being free from defects in materials and workmanship for twenty-four months from the date of delivery to the aircraft manufacturer or one thousand hours of operation, "whichever period expires first."[6] Def.'s SOF (Doc. 91), Rolls-Royce Model 250-C40/C47 Series New Original Equipment Engine Warranty and Disclaimer Summary (Exh. "7") at 13; *see also* Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 6. The warranty states in relevant part:

> (PURCHASER) ACCEPTS AND AGREES THAT THE WARRANTIES GRANTED TO THE (PURCHASER UNDER CLAUSE 5 OF THE PURCHASE CONTRACT AND, SO FAR AS THEY RELATE TO THE SUPPLIES AND EQUIPMENT, THE PRODUCT ASSURANCE GUARANTEES GRANTED TO THE (PURCHASER) UNDER CLAUSE 4 HEREOF ARE EXCLUSIVE AND ARE EXPRESSLY IN LIEU OF AND THE (PURCHASER) HEREBY WAIVES, RELEASES AND DISCLAIMS (I) ALL OTHER CONDITIONS AND WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS, AND ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OR TRADE, (II) ALL OTHER OBLIGATIONS AND LIAGBILITIES WHATSOEVER OF ROLLS-ROYCE WHETHER IN CONTRACT, WARRANTY OR TORT

---

[4] The Court notes that Plaintiffs' Complaint (Doc. 1-1) states that the crash occurred on April 12, 2012; however, Plaintiffs do not dispute Defendant's date of April 14, 2012.

[5] Page references refer to the CM/ECF page number.

[6] Plaintiffs dispute this statement urging that the form warranty is hearsay and fails to reference the subject engine. Mr. Sain, RRC's Senior Airworthiness Specialist, attested to the records as those kept in RRC's ordinary course of business, as well as the delivery of a logbook and warranty card with the originating helicopter. Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 6.

(INCLUDING WITHOUT LIMITATION, NEGLIGENCE, ACTIVE, PASSIVE OR IMPUTED LIABILITY OR STRICT LIABILITY) OR BY STATUTE OR OTHERWISE FOR ANY NON-CONFORMANCE, DEFECT, DEFICIENCY, FAILURE, MALFUNCTIONING, OR FAILURE TO FUNCTION OF ANY ITEM OF THE SUPPLIES OR OF THE EQUIPMENT REFERRED TO IN CLAUSE 5.2 OF THE PURCHASE CONTRACT, (III) STRICT LIABILITY OR PRODUCT LIABILITY, AND (IV) ALL DIRECT, INDIRECT, SPECIAL, CONSEQUENTIAL AND INCIDENTAL DAMAGES OF ANY NATURE WHATSOEVER[.][7]

Def.'s SOF (Doc. 91), Exh. "7" at 13. At the time of the hard landing, the subject engine's warranty had long expired by time and hours.[8] Def.'s SOF (Doc. 91), Service Record, Compressor Assembly, Compressor Serial No. CAC-45317 (Exh. "8"); *see also* Def.'s SSOF (Doc. 105), Exh. "13" at ¶ 7.

### 2. Third Stage Turbine Wheel Warranty

The Third Stage Turbine Wheel replacement part was subject to the Rolls-Royce M250 Spare Module/Part Limited Warranty ("Limited Warranty") which was "in effect for twenty-four (24) months from the date of shipment from the Rolls-Royce Authorized Distributor or one thousand (1,000) hours of operation, whichever occurs first."[9] Def.'s SOF (Doc. 91), Rolls-Royce M250 Spare Module/Part Limited Warranty (Exh. "9"); *see also* Def.'s SSOF (Doc. 105), Exh. "13" at ¶ 8. At the time of the hard landing, the subject Turbine Wheel had operated for thirty (30) months and had 1096.3 hours.[10] *See*

---

[7] Plaintiff acknowledges that this is the language as stated in § 6.1 of each warranty; however, reasserts its objection that the warranty does not apply to the subject engine. As noted, *supra*, the warranty was delivered with the originating helicopter and is properly admissible. *See* Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 6.

[8] Plaintiff reasserts its objection that the warranty does not apply to the subject engine. As noted, *supra*, the warranty was delivered with the originating helicopter and is properly admissible. *See* Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 6.

[9] Plaintiffs dispute this statement urging that the form warranty is hearsay and fails to reference the subject engine. Mr. Sain, RRC's Senior Airworthiness Specialist, attested to the records as those kept in RRC's ordinary course of business, as well as the delivery of a logbook and warranty card with the originating helicopter. Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 8.

[10] Plaintiff reasserts its objection that the warranty does not apply to the subject engine.

Compl. (Doc. 1-1) at ¶ 8; *see also* Def.'s SOF (Doc. 91), Exh. "6."

### D. *The Instant Litigation*

Med-Trans insured the Aircraft through Plaintiff Starr Indemnity and Liability Company ("Starr") under policy number SASICOM60005611-02. Compl. (Doc. 1-1) at ¶ 13. Med-Trans submitted an insurance claim to Starr that later indemnified Med-Trans "in an amount of $1,317,403.35 for the damage to the Aircraft." *Id.* at ¶ 14. Plaintiffs claim that the incident was caused by the subject Turbine Wheel that failed causing the hard landing. *See id.* at ¶¶ 10–11. Although Plaintiffs also allege that the incident caused injury to the pilot, they do not allege that they themselves have incurred any loss as a result of personal injuries.[11] *See* Compl. (Doc. 1-1). Both Med-Trans and Starr, as its subrogee, filed suit against RRC alleging strict liability, negligence, and breach of express and/or implied warranty claims. *Id.* at ¶¶ 15, 17–38.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id*. In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106

---

As noted, *supra*, the warranty was delivered with the subject Turbine Wheel and is properly admissible. *See* Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 8.

[11] It is undisputed that the pilot was the only occupant of the subject helicopter at the time of the hard landing.

S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  Moreover, a "mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

## IV. ANALYSIS

### *A. Negligence and Strict Liability Claims*

Defendant asserts that under Texas law, the economic loss doctrine bars Plaintiffs' tort claims.  Def.'s Mot. for Summ. J. (Doc. 90) at 4–12.  Plaintiffs argue that their tort claims should not be barred, because the helicopter, as well as medical equipment was damaged during the hard landing, and that this "other property" entitles Plaintiffs to recovery of all damages under a tort theory.  Pls.' Response (Doc. 97) at 5–10.

#### **1. Economic Loss Doctrine**

"The economic loss doctrine applies to both negligence and strict liability claims." *Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 90 (Tex. App. 2007) (citations omitted); *see also Helicopter Consultants of Maui, Inc. v. Thales Avionics, Inc.*, 2010 WL 11565653 (N.D. Tex. April 8, 2010).  "The economic loss rule applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself."  *Pugh*, 243 S.W.3d at 90 (citing *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007)); *see also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (same).  "In such cases, recovery is generally limited to remedies grounded in contract (or contract-based statutory remedies), rather than tort." *Sharyland*, 354 S.W.3d at 415 (citations omitted).  In other words, the "loss is merely loss of value resulting from a failure of the product to perform according to the contractual bargain and therefore is governed by the Uniform Commercial Code." *Mid*

*Continent Aircraft Corp. v. Curry County Spraying*, 572 S.W.2d 308, 311 (Tex. 1978).

"The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986) (citations omitted). "The distinction rests, rather on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products." *Id.* (citations omitted). "When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Id.*

### 2. Lack of Privity

Plaintiffs urge that because there was no privity of contract between Med-Trans and RRC, the economic loss rule does not apply. The Court disagrees.

"Texas courts have applied the economic loss rule to preclude tort claims between parties who are not in contractual privity." *Sterling Chemicals, Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797 (Tex. App. 2007) (listing cases). Indeed, over forty (40) years ago, the Texas Supreme Court held "that privity is not a requirement for a Uniform Commercial Code implied warranty action for economic loss." *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex. 1977). The *Nobility Homes* court went on to observe, "by holding that implied warranty remedies apply to economic injuries, we are consistent with, the well developed notion that the law of contract should control actions for purely economic losses and that the law of tort should control actions for personal injuries." *Id.*, 557 S.W.2d at 82 (quotations and citations omitted). More recently, the Texas Supreme Court reiterated its belief that parties' economic losses in cases of defective products or failure to perform a contract "were more appropriately addressed through statutory warranty actions or common law breach of contract suits than tort claims[,]" and recognized that it had applied the economic loss rule "even to parties not in privity[.]" *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011). In light of this authority, the Court finds Plaintiffs' argument that the lack of "commercial

relationship between Med-Trans and RRC" does not bar application of the economic loss rule.

### 3. "Other Property"

Defendant argues that the helicopter is a single integrated product, and Plaintiffs have not suffered damage to "other property." Def.'s Mot. for Summ. J. (Doc. 90) at 6–9. Plaintiffs counter that the failure of the subject engine resulted in damage to the helicopter, which is "other property." Pls.' Response (Doc. 97) at 7–10. Plaintiffs further assert that the medical equipment installed on the helicopter also represents "other property," the loss of which is recoverable in tort. *Id.* at 7–8.

#### a. Component parts

"Distinguished from personal injury and injury to other property, damage to the product itself is essentially a loss to the purchaser of the benefit of the bargain with the seller." *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308, 312–13 (Tex. 1978). "In regard to application of the economic loss doctrine to losses arising out of a defective product when there is no occurrence of 'personal injury' or damage to 'other property,' Texas courts have rejected the argument that damage to a finished product caused by a defective component part constitutes damage to 'other property,' so as to permit tort recovery for damage to the finished product." *Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 92 (Tex. App. 2007) (citing *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex. App. 2003)).

The Court finds *Grizzly Mountain Aviation, Inc. v. Honeywell Int'l, Inc.*, 2013 WL 5676069 (Tex. App. Oct. 17, 2013) instructive. In that case, "Grizzly filed a suit in Texas against Honeywell for products liability and warranty violations in connection with a helicopter crash that occurred in Oregon." *Id.* at *1. "Honeywell manufactured the engine and various engine replacement components that had been installed in the accident helicopter." *Id.* The *Grizzly* court described a situation similar to the instant case, as follows:

> Grizzly purchased the accident helicopter from its manufacturer, Kaman

> Aerospace Corporation ("Kamen") in June 2004. According to Grizzly, it also purchased a second helicopter from Kaman with a registration number of N133KA. Grizzly alleges that at some point, prior to the accident, it transferred the Honeywell-manufactured engine from the N133KA helicopter to the accident helicopter.

*Id.* The court concluded that "Grizzly's replacement of the original engine in the accident helicopter with another engine purchased from the same manufacturer did not make the helicopter "other property." *Id.* at *7 (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986)). Moreover, the court found "no distinction between a replacement and original component part and conclude[d] that the engine constituted a component of the helicopter[.]" *Grizzly Mountain*, 2010 WL 5676069 at *7 (citing *East River*, 476 U.S. at 867, 106 S.Ct. at 2300).

Plaintiffs suggest that *Helicopter Consultants of Maui, Inc. v. Thales, Inc.*, 2010 WL 11565653 (N.D. Tex. April 8, 2010) dictates the opposite result. The Court finds *Thales* distinguishable. In *Thales*, "Blue Hawaiian d[id] not claim that the replacement part (here, the engine) damaged the finished product (here, the helicopter), but rather vice versa." *Id*. at *8. "Thus, Blue Hawaiian [wa]s not seeking to recover in tort against a component part manufacturer, but rather s[ought] the value of the replacement part from the manufacturer of the whole product." *Id.*

Here, Plaintiffs seek recovery for the finished product, the Aircraft, because of damage allegedly caused by the subject engine. This situation mirrors that of *Grizzly*, and the Court finds that the Aircraft is not "other property." *See also American Eagle Ins. Co. v. United Technologies Corp.*, 48 F.3d 142, 145 (5th Cir. 1995) (holding that "the aircraft hull did not qualify as 'other property' damaged by the defective engine component."); *Mid Continent Aircraft Corp.*, 572 S.W.2d 308 (plane crash caused by a failure to attach a gear bolt lock plate during an engine overhaul, cost of plane as a whole considered purely economic loss). The economic loss rule reflects a policy decision to base recovery for purely economic losses in contract. "Since all but the very simplest of

- 10 -

machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself[,] . . . [and] would eliminate the distinction between warranty and strict products liability." *East River*, 476 U.S. at 867, 106 S.Ct. at 2300 (citations omitted) (alterations in original).

### b. Medical equipment

Plaintiffs assert that even if "the Helicopter is not considered 'other property,' the medical equipment installed thereon unquestionably does constitute 'other property.'" Pls.' Response (Doc. 97) at 8. In support of this argument, Plaintiffs refer to their controverting statement of facts which state that the hard landing "rendered the Helicopter and all components installed on the helicopter after purchase a total loss, including various emergency medical services equipment installed after the Helicopter was manufactured and sold." Pls.' CSOF (Doc. 98) at ¶ 34. Specifically, Plaintiffs refer to "Exhibit K" which is purported to be an "Executive Air Modification Invoice." *Id.* The exhibit states that "[t]he *estimate* for the EMS system, avionics equipment, modification kits and paint for a Bell Helicopter Model 407 N515MT is as follows[.]" Pls.' CSOF (Doc. 98), Executive Air Taxi Corp. Estimate 6/21/2004 (Exh. "K") (emphasis added). "An 'estimate' is 'an approximate judgment' or 'calculation.'" *Kilgore Expl., Inc. v. Apache Corp.*, No. 01-13-00347-CV, 2015 WL 505275, at *7 (Tex. App. Feb. 5, 2015) (citing Oxford English Dictionary, 867 (Oxford Univ. Press, 6th ed., 2007)). Plaintiffs have failed to provide any competent evidence that the installation was performed. *See* Fed. R. Civ. P. 56(e). As such, Plaintiffs cannot establish that "other property" was damaged. Accordingly, the Court finds that Plaintiffs' tort claims are barred by the economic loss doctrine.

### *B. Warranty Claims*

Defendant urges that Plaintiffs claim for "Breach of Express and/or Implied Warranty" must fail, because (1) the express manufacturer's warranty disclaims all other warranties and has expired; (2) the statute of limitations for any express or implied warranty under the Texas UCC has expired; (3) Plaintiffs failed to provide the required

notice regarding any warranty claims; and (4) Plaintiffs are not consumers under the Texas Deceptive Trade Practices Act ("DPTA"). Def.'s Mot. for Summ. J. (Doc. 90) at 12. Plaintiffs argue that RRC failed to provide evidence that the subject engine or "Turbine Wheel at issue in this case [were] subject to either form warranty, or that any such warranty was provided with the Turbine Wheel when it was purchased[.]" Pls' Response (Doc. 97) at 11. Plaintiffs further assert that RRC expressly denied providing the warranty to Med-Trans. *Id.*

The Court has rejected Plaintiffs claims that the form warranties were unauthenticated. *See* Section II.C., *supra*. Moreover, RRC's Senior Airworthiness Specialist confirmed that the express manufacturer's warranty card and logbook for the subject engine were delivered to Med-Trans. Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 6. Mr. Sain further confirmed that the limited warranty was provided with the Third Stage Turbine Wheel. *Id.*, Exh. "13" at ¶ 8. Each warranty contained an expiration term of twenty-four (24) months from the date of shipment from the Rolls-Royce Authorized Distributor or one thousand (1,000) hours of operation, whichever occurred first. Def.'s SOF (Doc. 91), Rolls-Royce Model 250-C40/C47 Series New Original Equipment Engine Warranty and Disclaimer Summary (Exh. "7") at 13 & Rolls-Royce M250 Spare Module/Part Limited Warranty (Exh. "9"); *see also* Def.'s SSOF (Doc. 105), Exh. "13" at ¶¶ 6, 8. The warranty for the subject engine also disclaims "all other conditions and warranties, express or implied[.]" Def.'s SOF (Doc. 91), Exh. "7" at 13. Similarly, the subject Turbine Wheel warranty unequivocally stated that it was "given expressly and in place of all other warranties, express or implied[.]" Def.'s SOF (Doc. 91), Exh. "9" at 16. The warranty for the subject engine began on January 15, 2005, more than seven (7) years prior to the hard landing. Def.'s SSOF (Doc. 105), Exh. "13" at ¶ 6. Furthermore, the incident occurred over thirty (30) months and over a thousand hours after the subject Turbine Wheel was installed in the subject engine. *See* Def.'s SOF (Doc. 91), Aircraft Status Sheet 4/10/2012 (Doc. 91-1) at 6, 11 & Post-Incident Photo. of Hobbs Meter (collectively Exh. "6"). Additionally, the Court

- 12 -

finds that Defendant's Answer (Doc. 7) does not conflict with this evidence.[12] The Court further finds that the express warranties were expired at the time of the hard landing, and any implied warranties were disclaimed. In light of this finding, the Court does not reach the other arguments raised in the motion for summary judgment.[13]

## V. CONCLUSION

Based upon the foregoing, the Court finds that the economic loss doctrine precludes Plaintiffs' tort claims. The Court further finds that the express warranties provided with the Aircraft and subject Turbine Wheel by their terms disclaimed any implied warranties and were expired at the time of the hard landing. Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion to Strike Defendant Rolls-Royce Corporation's Supplemental Statement of Facts in Support of its Reply in Support of its Motion for Summary Judgment (Doc. 106) is DENIED.

IT IS FURTHER ORDERED that Defendant Rolls-Royce Corporation's Motion for Summary Judgment (Doc. 90) is GRANTED.

IT IS FURTHER ORDERED that this matter is DISMISSED WITH PREJUDICE. **The Clerk of the Court shall enter judgment and close the case.**

Dated this 25th day of March, 2019.

Honorable Bruce G. Macdonald
United States Magistrate Judge

---

[12] Defendant's Answer states in relevant part: "Denies that RRC or RRNA provided any warranties for the Engine, except those that were delivered in writing at the time of first sale by RRC, and alleges that any such warranties excluded any other express or implied warranties." Answer (Doc. 7) at ¶ 18. RRC's Senior Airworthiness Specialist confirmed that the express manufacturer's warranty card and logbook for the subject engine were delivered to Med-Trans. Def.'s SSOF (Doc. 105), Sain Decl. 11/6/2018 (Exh. "13") at ¶ 6.

[13] Plaintiffs seek relief pursuant to Rule 56(d), Federal Rule of Civil Procedure, "to conduct further discovery as to RRC's unpled affirmative defenses." Pls.' Response (Doc. 97) at 15. Because the Court does not reach the issue of the statute of limitations, Rule 56(d) relief is not warranted, and Plaintiffs' request is denied.